PETER THOMPSON, *et al.*, v. THE WHEELER & WILSON MANUFACTURING COMPANY.

1. PROCEEDING IN ERROR, *Begun Within One Year.* Where a party, for the purpose of having an order of the district court overruling a motion for a new trial reviewed in the supreme court, attempts, in good faith, within less than one year after the order is made, to commence a proceeding in error in the supreme court by filing therein a petition in error and case-made, and having summons issued thereon; and afterward faithfully, properly and diligently follows up his attempt to commence his proceeding in error; and afterward, and within less than sixty days

after filing his petition, but not within one year after the said order was made, procures a service of summons: *Held*, That within the meaning of the civil code, and particularly as amended by § 2, chapter 126, of the Laws of 1881, which requires that proceedings in error must be commenced within one year after the judgment is rendered or final order made, the proceeding in error in the present case was commenced at the time when the original summons in error was issued; and therefore that the present proceeding in error was commenced within one year after the order was made overruling the motion for the new trial; and therefore that the supreme court has jurisdiction to hear and determine the present proceeding in error.

2. SEWING-MACHINE NOTE; *Defense.* The Wheeler & Wilson manufacturing company commenced an action against Peter Thompson and M. A. Thompson on the following instrument in writing, to wit:

"$25.                                        DEXTER, KANSAS, May 8, 1878.

"Six months after date, I promise to pay Wheeler & Wilson manufacturing company or order twenty-five dollars; payable at J. C. Fuller's bank, Winfield. Value received, with interest at ten per cent. per annum from date. After due, interest to be twelve per cent. Hereby waiving the benefit of the exemption and appraisement laws of the state of Kansas. The drawers, sureties and indorsers of this note respctively waive presentment, protest, and notice of non-payment. The Wheeler & Wilson sewing machine, No. 63,174, for the use of which to the maturity hereof this note is given, is and shall remain the property and under the control of said company or assigns; and for default of payment, or if the company deem the machine in unsafety, by removal or otherwise, it shall, on demand, be returned to said company, its agents or assigns, in good order, and with *pro rata* pay for its use. No agent is authorized to make any written or verbal agreement differing from this note, nor authorized to collect or transfer the same, unless indorsed by the Wheeler & Wilson manufacturing company without recourse for that purpose. And for the payment of said amount, I, M. A. Thompson, do hereby bind and charge my separate estate.

(Husband's name.)     PETER THOMPSON,
(Wife's name.)          M. A. THOMPSON.

[Indorsed:] "Town, Dexter; section, 23; post office, Dexter, Cowley county, Kansas. Due Nov. 8–11, '78.

"If paid before due, we will deduct from amount of principal and interest from maturity twelve per cent. per annum for unexpired term."

*Held*, That the defendants in such action may set up and prove that the sewing machine, for the use of which the foregoing instrument was given, was warranted to be in good condition and capable of doing good work; but that in fact it was useless and worthless as a sewing machine.

*Error from Cowley District Court.*

AT the November Term, 1881, of the district court, the *Wheeler & Wilson Manufacturing Company*, as plaintiff, recovered a judgment against defendants *Thompson* and wife, who bring the case here. The opinion states the facts.

*McDermott & Johnson,* for plaintiffs in error.

*S. D. Pryor,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: The defendant in error moves to dismiss this case from this court, upon the ground that it was not brought to this court within one year after the rendition of the judgment and the making of the final order complained of by the plaintiffs in error. It appears that the final judgment in the case was rendered on November 21, 1881. A motion was made for a new trial on November 23, 1881. The motion was heard and decided on December 1, 1881; and the case was filed in this court on November 28, 1882. A summons was issued on the same day, and made returnable on December 8, 1882. The summons was served by a deputy sheriff of Cowley county, (the county from which this case was brought,) upon one D. F. Best, the agent of the defendant in error, in that county. This service, it is admitted by the parties, was not a good service. This summons was returned to the clerk of the supreme court, and as soon thereafter as the plaintiffs in error ascertained the manner in which the service was made, they ordered an *alias* summons to be issued. This *alias* summons was issued on December 28, 1882, and made returnable on January 8, 1883. It was served, however, on December 30, 1882, upon S. D. Pryor, the attorney of record for the defendant in error. This last service of summons, it is admitted, was a good service, provided the summons could be legally served at that time. Section 542 of the civil code provides that "The supreme court may also reverse, vacate or modify any of the following orders of the district court or a judge thereof: . . . An order . . that grants or refuses a new trial."

Section 556 of the civil code, as amended by § 2, ch. 126, of the Laws of 1881, provides, among other things, that "no proceeding for reversing, vacating or modifying judgments or final orders shall be commenced, unless within one year

after the rendition of the judgment or making of the final
order complained of."

We suppose that an order refusing a new trial is a final
order within the meaning of said § 556 of the civil code,
and therefore that a proceeding in error in the supreme court
to reverse such an order must be commenced within one year
after the making of the order. But if it is not a final order
within the meaning of said section, then there is no limita-
tion whatever with respect to the time within which a pro-
ceeding in error may be instituted in the supreme court to
reverse such an order; and the proceeding to reverse such an
order might be commenced within two years, or five years,
just as well as within one year, after the making of the order.
Assuming, however, that it is a final order within the mean-
ing of said § 556, then was the proceeding in error in this
case commenced within one year after the making of such
order? Section 544 of the civil code provides that—

"The proceedings to obtain such a reversal, vacation or
modification shall be by petition, to be entitled 'petition in
error,' filed in a court having power to make such reversal,
vacation or modification, setting forth the errors complained
of; and thereupon a summons shall issue and be served, or
publication made, as in the commencement of an action."

It would seem from this that the filing of a petition in
error in the supreme court, and having a summons issued
thereon, would in one sense be the commencement of a pro-
ceeding in error; but is it the commencement of a proceeding
in error within the meaning of said § 556 of the civil code?
Section 20 of the civil code provides that—

"An attempt to commence an action shall be deemed
equivalent to the commencement thereof within the meaning
of this article, [the article with reference to the limitation of
actions,] when the party faithfully, properly and diligently
endeavors to procure a service; but such attempt must be
followed by the first publication or service of the summons
within sixty days."

And in Ohio, where they have a code of civil procedure
almost identical with ours, it has been decided that § 20 of

their civil code, which answers to a portion of § 20 of ours, is applicable by analogy to petitions in error. (*Buckingham v. Commercial Bank,* 21 Ohio St. 131.) It should probably, however, not be held that § 20 of the civil code actually governs with reference to the commencement of proceedings in error; for it only purports to apply to the commencement of ordinary actions in the district court, and only with reference to the ordinary statute of limitations. It is only by analogy that § 20 is applicable to proceedings in error. We are referred by the defendant in error to the case of *Bowen v. Bowen,* 36 Ohio St. 312, as overruling the case of *Buckingham v. Commercial Bank,* ante. We hardly think it does, however, for it does not purport to overrule that case, but claims to be in harmony therewith. In the case of *Bowen v. Bowen* the petition in error was filed within the proper time, but no summons was issued, nor any appearance made by the defendant in error, within the time prescribed by law. A summons was afterward issued and served upon the defendant in error; but whether it was served within the sixty days after the prescribed time had elapsed, or not, is not shown. The court held that the proceedings in error had not been commenced in proper time in that case, and dismissed the proceedings in error. It may possibly have been (though probably was not) upon the ground that a petition in error must not only be filed within the prescribed time, but that the summons must also, and in all cases, be issued and served within the prescribed time, and that no portion of the additional sixty days can in any case be counted; or it may have been upon the ground that the summons in that case was not even issued within the sixty days; or, as the summons in that case was not even issued within the prescribed period of time, not counting the sixty days, the court may have held, and probably did hold, that there was not even any attempt made to commence the action within the prescribed time. Certainly it could not in that case be said that the plaintiff in error "faithfully, properly and diligently endeavored to procure service" within the time pre-

scribed by the statute; and if he did not, then of course he did not bring his case within that provision of § 20 which allows sixty days additional time within which to procure service of summons after the prescribed time has elapsed.

After a careful consideration of this question, we have come to the conclusion that where a *bona fide* attempt to commence a proceeding in error is made by filing a petition in error and case-made, as was done in the present case, and having summons issued thereon, such act should be deemed and held to be equivalent to the commencement of such proceeding in error; provided, of course, that the plaintiff in error should faithfully, properly and diligently follow up his attempt by obtaining service upon the defendant in error within sixty days after the filing of the petition. We would therefore think that the date of the commencement of the present proceeding in error should be held to be November 28, 1882, when the petition in error was filed, and when the original summons was issued; and as the petition in error was filed and the original summons issued within less than one year after the motion for the new trial was overruled, although more than one year after the judgment was rendered, we think the supreme court may consider and determine every question involved in the ruling and determination of the trial court in overruling the motion for the new trial, (*Osborne v. Young*, 28 Kas. 769;) and therefore we think the motion of the defendant in error to dismiss the case from this court must be overruled.

1. Proceeding in error, begun within one year.

We now come to the merits of this case. This action was commenced by the Wheeler & Wilson manufacturing company, before a justice of the peace of Cowley county, against Peter Thompson and M. A. Thompson, on two instruments in writing, the first of which reads as follows:

"$25. DEXTER, KANSAS, May 8, 1878.

"Six months after date, I promise to pay to Wheeler & Wilson manufacturing company or order twenty-five dollars; payable at J. C. Fuller's bank, Winfield. Value received, with interest at ten per cent. per annum from date. After due, interest to be twelve per cent. Hereby waiving the ben-

31 — 29 KAS.

efit of the exemption and appraisement laws of the State of Kansas. The drawers, sureties and indorsers of this note respectively waive presentment, protest, and notice of non-payment. The Wheeler & Wilson sewing machine, No. 63,174, for the use of which to the maturity hereof this note is given, is and shall remain the property and under the control of said company or assigns; and for default of payment, or if the company deem the machine in unsafety, by removal or otherwise, it shall, on demand, be returned to said company, its agents or assigns, in good order, and with *pro rata* pay for its use. No agent is authorized to make any written or verbal agreement differing from this note, nor authorized to collect or transfer the same, unless indorsed by the Wheeler & Wilson manufacturing company without recourse for that purpose. And for the payment of said amount, I, M. A. Thompson, do hereby bind and charge my separate estate.

        ( Husband's name.)      PETER THOMPSON.
        ( Wife's name.)        M. A. THOMPSON.

[Indorsed:] Town, Dexter; section, 23; postoffice, Dexter, Cowley county, Kansas. Due Nov. 8–11, '78.

"If paid before due, we will deduct from amount of principal and interest from maturity twelve per cent. per annum for unexpired term."

The other instrument is precisely the same in substance and in form as the one quoted, except that it.was given for $20, instead of $25, and was payable in twelve months after date, instead of six months after date. The defendants filed a bill of particulars, which reads as follows:

"Now come the defendants, Peter Thompson and M. A. Thompson, and in answer to the bill of particulars of the plaintiff say:

"That they are not indebted to the plaintiff in the sum of forty-five dollars, or in any other sum.

"The defendants say that on the 8th day of May, 1878, they purchased of the plaintiff, through its agents, a No. 8 Wheeler & Wilson sewing machine, for the sum of seventy-five dollars ($75), in payment for which said defendants paid plaintiff the sum of thirty dollars ($30) cash, and executed the two notes sued on in this action. The plaintiff, through its agents, at the time of said purchase by the said defendants, *warranted* said machine to be in good order, and to do good work as a sewing machine, and to continue in

good order and to do good work for five years from and after said purchase. The said defendants now say that said sewing machine, so purchased by them and warranted by the plaintiff, was not in good order and did not do good work; in fact it was entirely useless to these defendants for the period of two and one-half years, and the plaintiff entirely failed and refused to put said machine in good order, although requested so to do, to the great damage of these defendants in the sum of sixty-five dollars.

"Defendants say that plaintiff, through its said agents, subsequently attempted to repair said sewing machine, but only partially succeeded; that since said effort to repair said machine it has failed to do good work and was entirely useless for many purposes for which defendants needed a sewing machine, and has continued to be so useless until this day, to the damage of defendants in the sum of fifteen dollars ($15).

"Wherefore, defendants demand judgment against plaintiff for the sum of eighty dollars ($80) and costs."

After judgment was rendered in the justice's court, the case was taken on appeal to the district court, where the trial was had before a court and a jury. On the trial, Peter Thompson was introduced as a witness on the part of the defendants, and his testimony and the proceedings connected therewith were as follows:

"I am one of the defendants. I know the machine for which the notes sued on in this action were given. It was a Wheeler & Wilson No. 8 sewing machine. I bought it from N. Shomber. It was bought at my house in this county, about eighteen miles east of here. I bought the machine for $75; paid $30 by delivering a cow, and gave these notes for the balance.

"Here counsel for the defendants offered to prove by the witness that Shomber, when he sold the machine, verbally warranted it to do good work, and that defendants refused to purchase said machine unless such warranty was made; to which evidence the plaintiff objected, on the grounds that it was incompetent and not admissible to contradict the written contract; which motion the court sustained; to which the defendants duly excepted.

"Counsel for defendants then offered to prove by the witness that the written contracts or notes, the ones sued on in this action, did not contain the whole of the contract entered

into between witness and Shomber at the time the machine
was purchased. Objected to by plaintiff as incompetent, and
matter not pleaded, and not admissible to contradict the writ-
ten contract; which objection was sustained by the court, and
the defendants duly excepted.

"Counsel for defendants then offered to prove by the wit-
ness that the machine for which the notes were given did not
do good work, and was useless as a sewing machine. Objected
to by plaintiff as incompetent, irrelevant, and immaterial;
objection sustained by the court, and the defendants excepted."

The defendants then offered in evidence the deposition of
N. Shomber. Mr. Shomber testified, among other things,
that in the spring of 1878, D. F. Best was the agent for the
Wheeler & Wilson manufacturing company at Winfield, Cow-
ley county, Kansas, and that he, Shomber, was engaged in
selling the sewing machines of such company for Best. He
further testified, that on May 8th, 1878, he sold the machine
for which the notes in controversy were given to the defend-
ants for $75 — $30 of which was to be paid by the delivery
of a cow. He further testified as follows:

"I took Mr. Thompson's note for the cow at thirty dollars,
payable to Mr. Best, and for the other two payments I took
two notes signed by Mr. Thompson and his wife, and payable
to the Wheeler & Wilson manufacturing company. I after-
ward delivered all three of these notes to Mr. D. F. Best, at
Winfield, Kansas. When I sold the machine to Mr. Thomp-
son I warranted it to do good work for five years from that
time, and if it failed, that the company or Mr. Best would
make it do so, and would give any instruction necessary to
operate the same. Mr. Thompson said he did not want to
have to take the machine to Winfield when it needed fixing,
and I agreed that Best or some one for the company would
come to his residence whenever the machine needed any fix-
ing or attention, and that he, Thompson, should not be re-
quired to take the machine to Winfield or anywhere else. I
was authorized by Mr. Best to make such agreement upon the
sales of the machines, and afterward reported to Mr. Best that
I had made such an agreement with Mr. Thompson, and he
approved it."

The plaintiff objected to the introduction of this deposition,
on the ground that it was incompetent, irrelevant and imma-

terial, and tended to contradict the written instruments. The objection was sustained by the court, and the defendants excepted. The record further shows as follows:

"The defendants offered no other or further evidence, and thereupon the plaintiff moved the court to discharge the jury from the further consideration of the case, and to render judgment for the plaintiff for the amount claimed, which motion was sustained by the court, and the defendants duly excepted. Whereupon the jury was discharged by the court, and the court finds:

"That there is due and owing the plaintiff from the defendants on the notes sued on in this case, the sum of sixty-four dollars and forty-five cents, principal and interest.

"It is therefore considered, ordered and adjudged by the court here, that the plaintiff, Wheeler & Wilson manufacturing company, have and recover judgment against the defendants, Peter Thompson and M. A. Thompson, the said sum of sixty-four dollars and $\frac{45}{100}$, so as aforesaid found due, with interest from this date at the rate of twelve per cent. per annum, together with the costs of this action taxed at $73.20; and hereof let execution issue.

"To which judgment the defendants excepted and except, and gave notice of a motion for a new trial."

The defendants then moved for a new trial, upon the ground of error of law occurring at the trial, and duly excepted to by the defendants, which motion the court overruled, and the defendants excepted. They now bring the case to this court for review.

In this court, the plaintiffs in error, defendants below, assign as grounds for reversal the foregoing supposed errors, which were duly excepted to by them. We think the judgment of the court below must be reversed for these errors, or at least for some of them; for some of them are in fact errors, and material errors, and they are all involved in the ruling of the court below upon the motion for the new trial; and the ruling of the court below upon the motion for the new trial is now properly before us for consideration, as we have already decided on the motion for dismissal. We think that the court below committed error, even upon that view of the case most

favorable to the defendant in error, plaintiff below. Supposing that the instruments in writing sued on, the so-called notes, in fact express the true consideration for the notes, and that this consideration was the use for one year of a Wheeler & Wilson sewing machine, and that the stipulations with regard to this expressed use cannot be contradicted or varied by parol evidence, still we think the court below committed error; for even in that case the defendants, under their bill of particulars, had the right to show that the party from whom they purchased the machine — or rather, from whom they purchased the use of it — warranted the machine to be in good working order, and that it would do good work; but that in truth and in fact it was not in good order, would not do good work, and was wholly useless and worthless. If the defendants contracted for the use of the machine for one year; and if it was the understanding of the parties that the machine was fit for use, when in fact it was not; and if the defendants gave the so-called notes for nothing else except such use, then the consideration for the notes wholly failed, and the plaintiff ought not to be allowed to recover the full face of the notes. It should not be allowed to recover something for nothing.

*2. Sewing-machine note; defense.*

We suppose that in fact the defendants purchased the sewing machine. The evidence introduced and offered shows this to be the case; but in the light of the notes sued on, together with the evidence, we suppose that it should be held that the defendants purchased the use of the machine for one year, and agreed to pay $45 therefor; and also purchased the machine itself, paying in addition to the $45, $30 therefor — the title to the machine, however, not to pass from the plaintiff to the defendants until the notes in controversy should be paid; and if this was the contract, we would think that the defendants should be allowed to prove it, and to show that the machine was in fact worthless as a sewing machine. This would not vary or contradict in the slightest degree the terms of the notes sued on. It would simply be showing the whole of the transaction had between the parties, of which the giv-

ing of the notes was a part.    In connection with this subject, we would refer to the following cases :  *Chapin v. Dobson,* 78 N. Y. 74;  *Weeks v. Medler,* 20 Kas. 57.

We think the defendants were entitled to prove the whole of the transaction had in connection with the sewing machine and the notes, and that the court below erred in refusing to permit them to do so.    Of course, so far as the contract is embodied in the notes, the notes must be held to be conclusive; but that portion of the contract not embodied in the notes, and not in conflict with the terms of the notes, may be proved by parol.

The judgment of the court below will be reversed, and the cause remanded for a new trial.

All the Justices concurring.